IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

WILLA F. BIAS,

       Plaintiff,

V.                                 CIVIL ACTION NO. 3:06-0444

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

**<u>MEMORANDUM ORDER</u>**

In this action, filed under the provisions of 42 U.S.C. § 405(g), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed her application on July 30, 2002, alleging disability commencing April 1, 1999, as a consequence of bilateral carpal tunnel/cubital tunnel syndrome, heart problems, high blood pressure, diabetes and bone spurs on the right foot and left shoulder. On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-nine years of age and had obtained a sixth grade education. Her past relevant employment experience consisted of work as

a seamstress.  In his decision, the administrative law judge found that plaintiff suffered from "heart pathology, hypertension, bilateral hand injury, left shoulder injury, anxiety/personality disorder and borderline IQ," impairments which he considered severe.   Though concluding that plaintiff was unable to perform her past work,[1]  the administrative law judge determined that she had the residual functional capacity for a limited range of sedentary level work.[2]  On the basis of this finding, and relying on Rule 201.18 of the medical-vocational guidelines[3] and the testimony of a vocational expert, he found plaintiff not disabled.

From a review of the record, it is apparent that substantial evidence supports the Commissioner's decision. Plaintiff testified that she experienced dull pain in the left shoulder; tingling in the hands and arms when doing repetitive work and in the right leg due to circulation problems; chest pain three to four times per week; panic attacks two to three times per week; and difficulty with lifting/carrying, sitting, standing and walking due to these problems.

The medical evidence reflects a history of heart disease with vasospastic angina which contributed to a myocardial infarction in April of 1999 and a number of emergency room visits thereafter for chest pain. Angioplasty with stenting was done on June 10, 2002. When re-stenosis of the stent was discovered on June 27, 2002, another had to be inserted. In September 2002, Dr. Nutter, who performed a consultative examination for the Commissioner, noted plaintiff's report

---

[1]This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]While Finding No. 11 at the end of the administrative law judge's decision reflects a limitation to light level work, it is contradicted by the language in the decision itself and in Finding No. 6, both of which reflect he found plaintiff capable of a limited range of sedentary level work.

[3]20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1.

of continuing chest pain two to three times per week, but exam did not reveal any shortness of breath or other findings which could be related to her cardiac condition. Dr. Nutter did detect mild "clubbing"[4] but did not find it indicative of cardiac, pulmonary or circulation problems. Subsequent to 2002, there is little evidence concerning plaintiff's cardiac condition, and her treating physician indicated in an August 19, 2003 letter that this condition was "mostly stable."

Plaintiff had left cubital tunnel and carpal tunnel release surgery on February 26, 2002 and had the same procedure performed on the right two months later. Follow-up reports reflect resolution of the numbness and tingling in the hands and an ability to use them for daily activities, although weakness persisted, and the treating orthopedic surgeon felt she could not do her past work because of this. A Functional Capacity Evaluation performed on August 16, 2002 showed plaintiff had full range of motion in both upper extremities, but there was generalized weakness, and she was considered capable of only sedentary level work. A workers' compensation exam from November 2002 also showed weakness in the hands, but plaintiff was able to button and pick up coins with either hand though she showed some difficulty. Dr. Nutter observed diminished grip strength and Heberden's nodes[5] but no difficulty with writing or picking up coins.

With regard to left shoulder pain, both Dr. Guberman and Dr. Nutter, who performed consultative evaluations, detected tenderness and limited range of motion in the shoulder, but there is no evidence plaintiff received treatment for a problem in this area. With regard to right leg pain,

_____

[4]Enlargement of the ends of the fingers and/or toes caused by an overgrowth of the soft tissue. It is often seen in patients who suffer from heart and/or lung disease. Attorney's Dictionary of Medicine, C-324 (2008).

[5]These are bony outgrowths at the joints of the fingers observed in some forms of arthritis. Id. at H-43.

3

Dr. Nutter noted complaints of tenderness and give away weakness in the knees, more so on the right, but found full range of motion. Plaintiff had a normal gait and was able to walk on her heels and toes, in tandem and to squat, but with complaints of back, not leg, pain. Dr. Meadows, plaintiff's treating physician, evaluated her for right leg/knee pain just three days after Dr. Nutter's exam and detected only some tenderness in the knee with full range of motion and no indication of ligament instability. The evidence does not reveal that plaintiff sought further treatment for knee/lower extremity problems. While Dr. Meadows wrote a letter to plaintiff's attorney describing her medical condition, he made no mention of left upper extremity or right lower extremity problems.

Plaintiff also has a history of hypertension which the administrative law judge determined to be a severe impairment; however, there is no indication from the record that this impairment would limit her beyond her other conditions. Similarly, plaintiff testified she had been diagnosed with diabetes that was controlled by diet, and she noted no other problems as a consequence of this condition. The administrative law judge thus found this impairment was not severe.

Allegations of limitation due to depression, anxiety and panic attacks were also made by plaintiff in her testimony. During the period prior to the administrative law judge's decision, she received medication from Dr. Meadows for these symptoms. As the administrative law judge noted, she was observed to be nervous by a district office interviewer, and she was also diagnosed with anxiety disorder, dependent personality disorder and borderline intellectual functioning[6] by Dr. David Frederick, who examined her at the Commissioner's request. Dr. Frederick noted her activities of daily living, concentration, persistence, pace and immediate, recent and remote memory were all

---

[6]This diagnosis was based on WAIS-3 scores which showed a verbal I.Q. of 72, performance score of 80 and full scale score of 74. WRAT-3 scores showed 6th grade reading level, 3rd grade spelling and 4th grade math levels.

within normal limits. The administrative law judge concluded that plaintiff's mental complaints were severe and relied on the assessment from a state agency psychologist in finding that she was moderately limited in her abilities to understand, remember and carry out detailed instructions and to maintain attention and concentration for extended periods. Taking these restrictions into account as well as plaintiff's academic abilities, the administrative law judge found she could perform tasks involving one-two step directions in a routine, low stress work setting.

Physically, the administrative law judge found plaintiff would be limited to sedentary level work which did not involve repetitive motion or exposure to temperature extremes and which took into account mild weakness in her knees and mild to moderate difficulty with fine manipulation. The administrative law judge indicated he relied on Dr. Meadows' comments that she could not perform significant manual labor or repetitive motion type work; Dr. Bolano's comments that she could not perform her past work and would be limited to light level work; and on the Functional Capacity Evaluation results.

Plaintiff alleges the administrative law judge's decision is not supported by substantial evidence, in part because her testimony was entitled to full credibility since "each of her complaints [is] substantiated by the record." Consistent with 20 C.F.R. § 404.1529(b), the administrative law judge determined that the evidence established the presence of medically determinable impairments which "could reasonably be expected to produce" the symptoms alleged by plaintiff.[7] He went on to consider the intensity and persistence of her symptoms but found they were not so severe as to prevent her from performing the limited range of sedentary work noted. As support, the administrative law judge pointed to a number of factors, including inconsistencies in plaintiff's

---

[7]See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).

various statements about her daily activities and about her functional abilities, the absence of evidence indicating problems related to diabetes, her refusal to stop smoking despite repeated orders to do so from her physicians, and her acknowledgment that she had not sought mental health treatment, nor had it been recommended. In finding that plaintiff could only perform a limited range of sedentary work, the administrative law judge clearly determined she had pain, limited use of her hands and arms, and a degree of mental impairment due to borderline intellectual functioning, anxiety and depression. In view of the evidence, and taking account of the administrative law judge's "opportunity to observe the demeanor and to determine the credibility of the claimant," these findings are entitled to "great weight," Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984), and the Court perceives no basis for questioning the credibility findings of the administrative law judge.

Plaintiff also asserts that the administrative law judge disregarded the opinion of Dr. Meadows that she was disabled. Dr. Meadows provided several opinions relating to plaintiff's condition, but the one plaintiff refers to is a very brief note dated July 22, 2002 in which he relates that plaintiff has a history of coronary artery disease with two myocardial infarctions and a history of severe carpal tunnel syndrome "which needs to be verified through Dr. Bolano." He nonetheless adds that these render her unable to work and disabled. While the administrative law judge did not comment on this statement in his decision, he did in a letter to plaintiff's counsel written the date he issued his decision. He indicated this particular report had not made it into his file prior to the mailing of the decision but noted he rejected the July 22, 2002 assessment for several reasons. First, he noted that a determination about whether a claimant is disabled is an issue reserved to the Commissioner.[8] Second, the administrative law judge noted there was no specific medical data

---

[8]20 C.F.R. § 404.1527(e)(1).

mentioned in the letter, just Dr. Meadows' diagnoses.[9] He also observed that this opinion from Dr. Meadows was contradicted by his earlier opinion that plaintiff should avoid "significant manual labor and repetitive motion type work," and that Dr. Meadows offered no explanation for the difference. The administrative law judge also pointed out this physician's failure to note that plaintiff's coronary artery disease and carpal tunnel syndrome had improved with treatment. Contrary to plaintiff's arguments relative to the weight to be accorded a treating physician's opinion, the regulations now provide that such an opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[10] The administrative law judge was clearly correct in concluding that the brief opinion from Dr. Meadows did not meet these criteria.

While plaintiff also argues that the administrative law judge failed to consider the combined effect of her impairments, this argument is likewise without support. The administrative law judge specifically explained, in his analysis of whether plaintiff's impairments met or equaled a listing, that he considered not only her heart disease, hypertension, hand, shoulder and mental impairments, which he concluded were "severe," but also other conditions noted by the consultative examiners and mentioned in plaintiff's testimony. Similarly, it is clear he considered all her impairments in

---

[9]20 C.F.R. § 404.1527(d).

[10]20 C.F.R. § 404.1527(d)(2). See also, Winford v. Chater, 917 F.Supp. 398, 400 (E.D. Va. 1996); Ward v. Chater, 924 F.Supp. 53, 55 (W.D. Va. 1996) (stating that the provisions in this regulation relative to weight accorded treating physician opinions supercedes the traditional Fourth Circuit treating physicians' rule).

assessing her residual functional capacity and in formulating the hypothetical questions he gave to the vocational expert. Thus, there is no merit to this argument.

Plaintiff asserts that the administrative law judge did not consider new evidence she submitted subsequent to the hearing. As noted, the administrative law judge wrote to plaintiff's counsel the day his order was mailed and indicated the new evidence had not been placed in his file prior to the issuance of the decision. He addressed the evidence from Dr. Meadows and also related he had reviewed a receipt from Dr. Fiery, an opthamologist, reflecting a visit on February 18, 2004 and a diagnosis of macular degeneration.[11]  For some reason, the administrative law judge did not mention a brief note from Dr. Fiery also reflecting this diagnosis which contained a handwritten notation of plaintiff's visual acuities, which were 20/30 in each eye.

Plaintiff argues that this condition is related to her diabetes and that Dr. Fiery's brief note establishes it as a severe impairment. The Court concludes it does neither. Dr. Fiery did not provide an opinion as to the cause of the macular degeneration, nor did he indicate it was disabling or even significantly limiting. According to Section 2.00(A)(7)(a), Table 1, of the Medical-Vocational Guidelines[12] a visual acuity measurement of 20/30 equates to a visual acuity efficiency of ninety percent, suggesting that plaintiff's vision was not significantly compromised by macular degeneration or any other cause. Also, there is no indication from Dr. Fiery or from other evidence that this condition is linked to plaintiff's diabetes. Thus, the diagnosis of macular degeneration has

---

[11]A disease marked by various alterations, such as spots of pigmentation, in the macula lutea. The disease causes loss of central vision, occurs bilaterally and at any age, and is hereditary or caused by trauma or sclerosis (hardening), particularly in older persons. Attorney's Dictionary of Medicine, supra. at M-10 (2007).

[12]20 C.F.R. Part 404, Subpart P, Appendix 1.

not been shown to cause a significant visual limitation, nor does that diagnosis transform plaintiff's diabetes into a severe impairment.[13] In light of the evidence and taking account of the circumstances noted, the Court concludes that the administrative law judge's failure to mention Dr. Fiery's letter is of little significance as the information in it does not change or add significantly to what he ascertained from the billing page.

Plaintiff asserts that the Appeals Council also failed to "fairly" consider "new and additional" medical evidence submitted to it. Plaintiff references reports from the Prestera Center, including an "Initial Psychiatric Evaluation" dated September 27, 2004 containing a diagnosis of major depressive disorder with psychotic features; two treatment notes from a psychiatrist at Prestera dated October 1 and October 25, 2004; a medication list; and a form providing information as to plaintiff's symptoms, medication and functioning completed by Nicole Wilson, M.A., L.P.C., L.S.W., on September 22, 2004. This last report reflects ratings of no dysfunction in the areas of self-care, community living and maladaptive, impulsive and dangerous behaviors and a rating of moderate dysfunction in social, interpersonal and family relationships and concentration and task persistence. The psychiatric notes reflect plaintiff's complaints of depression, poor sleep and hearing voices and adjustment of medication.

All of this evidence is listed in an "Order of Appeals Council" and was considered when the Appeals Council reviewed plaintiff's claim.[14]  The "Notice of Appeals Council Action" to which the "Order of Appeals Council" is attached contains the representation that the Appeals Council

---

[13]The administrative law judge also noted that plaintiff had not complained of vision problems at the hearing.

[14]It is noted that the September 27, 2004 report from the Prestera psychiatrist was misidentified as being from Ms. Wilson, the therapist.

9

considered the evidence listed in the Order and found it did not provide a basis for changing the administrative law judge's decision. The Notice refers specifically to the new diagnosis of macular degeneration, but the Appeals Council found that the visual acuity of 20/30 "is not indicative of a significant limitation." While plaintiff contends that the Prestera reports corroborate her complaints of depression and nervousness and should have been grounds for an allowance or remand, this argument is not persuasive. Neither the "Initial Psychiatric Evaluation"nor the psychiatrist's treatment notes suggest greater mental limitations than found by the administrative law judge, and the findings of moderate limitation in social functioning and concentration, persistence and pace in the case manager's initial assessment are consistent with the administrative law judge's own ratings in these areas and were accounted for in his findings. The Court concludes that the Appeals Council finding that the new evidence from Prestera did not provide a basis to change the administrative law judge's decision is supported by substantial evidence.

Finally, plaintiff reports that she was found disabled beginning July 1, 2004 based on a subsequent application filed in January 2005. She alleges she should have been found disabled earlier than that, extending into the current case. The Appeals Council addressed  this issue, noting that the state agency found plaintiff limited to sedentary level work and, based on her age,[15] education and the nature of her past relevant work, Rule 201.09 of the Medical-Vocational Guidelines or "grids" directed a finding of disabled. The Council, noting that the regulations prohibit the Commissioner from applying the grid rules "mechanically" in borderline age situations, [16] moved plaintiff's onset date back six months to July 1, 2004. The Appeals Council specifically found that

---

[15]She attained age fifty on January 23, 2005.

[16]20 C.F.R. § 404.1563(b).

10

"no earlier onset is appropriate based on your attainment of age 50," and the Court finds this reasoning consistent with the regulations and the evidence. Specifically, 20 C.F.R. § 404.1563(b) provides that if a claimant is within a "few days to a few months" of reaching an older age category, and reaching that category would result in a finding of disability, the Commissioner will "consider whether to use the older age category after evaluating the overall impact of all the factors" in the case. The Court agrees with the Appeals Council that the state agency was generous in moving plaintiff's onset date back six months. The finding of disability was based solely on a change in plaintiff's age, not in her condition, and the Court finds the Appeals Council's decision was adequately explained and clearly supported by substantial evidence.

On the basis of the foregoing, it is **ORDERED** that plaintiff's motion for judgment on the pleadings be denied, that the like motion of defendant be granted and the decision of the Commissioner affirmed. All matters in this case being concluded, it is **ORDERED** dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.


ENTER:        April 28, 2009


MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

11